Clement, J.
The plaintiff and the defendant Hollingsworth each own real property in the same vicinity in Brooklyn, and derive their several titles from a common' source, and both parcels are subject to covenants against nuisances which were made in the deeds given by the parties who owned the common title. The covenant reads as follows:
“ I, the party of the second part, in the within indenture named, in consideration thereof and'of the sum of one dollar to me in hand paid by the said party of the first part in saiu indenture named, do for myself, my heirs and assigns, hereby covenant to and with the aforesaid party of the first part, her heirs, executors and administrators, that neither I nor my heirs or assigns shall or will at any time hereafter erect, permit or allow to be erected or carried on upon the premises described and granted in said indenture, or any part thereof, any brewery, distillery, slaughter-house, smith shop, furnace, steam engine, brass foundry, nail or other iron factory, sugar, bakery, cow stable, hog pens, or any soap, candle, oil, starch, varnish, vitriol, glue, ink, turpentine or lamp-black factory, or any factory or establishment for the tanning, dressing or preparing of skins, hides, or leather of any other dangerous, noxious, unwholesome or offensive establishment, trade or calling or business whatsoever.”
The defendants were about to erect on the lots owned by Hollingsworth a livery stable, and thereupon plaintiff brought this action to restrain its construction. The court at special term held that a livery stable would be offensive to the neighborhood within the meaning of the mutual covenants, and granted a perpetual injunction restraining the defendants from the erection of the stable or from using any building hereafter erected on said premises for such a purpose. Assuming that the plaintiff can take the benefit of the covenant and enforce its provisions, and also assuming as *393 matter of fact that a livery stable is offensive, we are then called upon to decide" whether such a business, is prohibited by the covenant under the last clause “ or any other * * ■56-offensive establishment, trade, calling or business.” It was found as a fact in the case that in the year 1866, when the covenant was made, a livery stable was a familiar and common object in the city of Brooklyn, and the parties when they made their contract had that fact in view, and after deliberation determined that cow stables should be prohibited in so many words. They named certain trades which should not be permitted and added the last general clause in order to prevent any other which would be in the same degree as those already mentioned, dangerous, noxious, unwholesome or offensive.
The learned counsel for the plaintiff contends that public horse stables were forbidden by the covenant. He concedes that private horse stables were permitted. Stables, whether used for the keep of horses or cows, are all of one class or kind, and a private horse stable is equally offensive as a livery stable, provided the same number of horses are kept in each. A private stable where the owner kept ten horses would be more disagreeable to the neighborhood than a public one containing five.
It is proper on this point to refer to the testimony of the leading expert witness called by the plaintiff. He testified “ any stable where a large number of horses are kept, even though kept well as it can be, depreciates the value of surrounding property.” The witness describes the objections to a stable where “ a large number of horses are kept ” and the evils complained of are odors, noise, rats and flies. A stable is more or less offensive according to its size and the number of horses kept. While it is true a public stable usually contains more horses than a private one, yet it is offensive, not because the horses are let for hire or stabled for outside owners, but because it contains a large number of horses. The word “offensive” in the covenant included all establishments, trades, callings or business of a different class than *394 those already recited which are disagreeable to the senses in the same degree (nosoitur a sooiis), but it does not include trades of the same class which has been already named.
If stables had been prohibited in so many words, then the general words would not refer to them, and we think that the use of the word “ stables ” has the same effect though it is preceded by the word “ cow.” That word limited the establishments prohibited of the same class, and the words “other, &c.,” do not include stables where domestic animals are to be kept.
The parties could have prohibited all stables by omitting a single word. Effect should be given to all the words of a contract if possible, and if the parties prohibited one of a class they considered all of that class, and intended to prohibit those mentioned and not others of the same class. Those who made the covenants agreed that livery stables were not offensive, and the conclusion ■ arrived at by them is binding upon their grantees. The authorities on this question seem clear and to the point.
In Baker agt. Ludlow (2 Johns. Cas., 289) the words used in a policy of marine insurance were as follows : “ It is agreed that salt, grain of all kinds, Indian meal, fruits, cheese, dried fish, vegetables, and roots and all other articles perishable in their own nature, are warranted by the assured free from average unless general.” A question arose as to pickled fish which formed part of the cargo.
The court say : “ By the terms of the memorandum fish in general were not intended to be included, and the expression dried fish implies that other fisli were not intended.” It was also held that the subsequent words “ all other articles perishable in their own nature ” were not applicable to the articles previously enumerated nor could they repel the implication arising from the enumeration of them.
In the case of Hare agt. Horton (5 Barn, & Adol., 715), A. granted by mortgage to B. an iron foundry and two-dwelling houses and the appurtenances, “ together with all *395 grates, boilers, bells and other fixtures in and about the said two dwelling houses.” The court decided that the conveyance of the foundry, if nothing else had been expressed, would have passed ,the title to the fixtures, but the mention of the articles in the two dwelling houses showed that it was the intention of the parties that the fixtures in the foundry were not conveyed.
Lord Mansfield, in construing the act of 43 Elizabeth (chap. 3, sect. 1), which required the overseers of the poor to tax every occupier of lands, coal mines and salable under-woods, in a case where it was sought to tax the occupier of lead mines, observed (The Smelting Company agt. Richardson, 3 Burr., 134) that the words of the act “are coal mines, not mentioning any other kind of mines, and that is-equal to an express exception or exclusion of all other mines ” (See, also, The King agt. The Inhabitants of Sedgley, 2 Barn & Adol. 65).
In Parsons on Contracts (vol. 2, 516) the rule as to construction of contracts is stated as follows: “ If, however, there be many things of the same class or kind, the expression of one or more of them implies exclusion of all not expressed, and this even if the law would have implied all if none had been enumerated.”
For the reasons above given the judgment appealed from must be reversed and a new trial granted, costs to abide the event.
Van Wyok, J., concurred.